**INDIANA DEPARTMENT OF NATURAL RESOURCES, Appellant–Respondent,**

v.

**SOLAR SOURCES, INC.,**
Appellee–Petitioner.

No. 63A05–9708–CV–346.

Court of Appeals of Indiana.

Nov. 20, 1998.

Opinion Granting Rehearing
in Part Feb. 11, 1999.

Jeffrey A. Modisett, Attorney General, Myra P. Spicker, Deputy Attorney General, Rachel Zaffrann, Deputy Attorney General, Indianapolis, for Appellant–Respondent.

Mary M. Runnells, Bloomington, for Appellee–Petitioner.

### OPINION

RUCKER, Judge.

On request by Solar Sources, Inc. the Indiana Department of Natural Resources issued a ruling interpreting certain provisions of the Indiana Surface Mining Control and Reclamation Act. An Administrative Law Judge affirmed. Finding the interpretation arbitrary, capricious, and contrary to law the trial court set aside the decision. The Indiana Department of Natural Re-

sources now appeals raising several issues for our review which we consolidate and rephrase as whether the trial court erred in setting aside the Administrative Law Judge's decision. We affirm.

Solar Sources, Inc. (Solar) operates a number of coal mines within the state of Indiana under several permits issued by the Department of Natural Resources (DNR). The permits were issued pursuant to Indiana's Surface Mining Control and Reclamation Act (SMCRA) Ind.Code §§ 13–4.1–1–1 to 13–4.1–15–14.[1] By terms of SMCRA and regulations promulgated thereunder, an application for a permit must contain a "blasting plan" for the proposed permitted area. The plan must include the following:

(1) the maximum ground vibration and airblast limits the permittee will not exceed during blasting operations;

(2) the bases for the establishment of the proposed ground vibration and airblasts limits;

(3) the methods to be applied to control the adverse effects of blasting operations;

(4) description of the blasting warnings and site access control equipment and procedures to be used; and

(5) description of the procedures for recording and retention of [blasting operations].

310 IAC 12–3–43. The regulations promulgated under SMCRA also set forth three methods by which an operator may prove compliance with ground vibration limits: (1) the scaled distance equation, (2) the maximum peak particle-velocity limits, or (3) the blasting level chart. 310 IAC 12–5–36(h). A blast may or may not violate ground vibration limits depending on which method is utilized. For example a blast that would violate the blasting chart would not violate the peak particle-velocity limits and vice versa.

For a number of years the permits under which Solar operated contained language that allowed Solar to decide which of the three blasting limits would apply after the blast and after the seismographic data from the blast has been received.[2] On August 23, 1994, the Director of the Reclamation Division of DNR sent a letter to Solar directing the company to submit a nonspecific revision for each of its permits. More specifically Solar was directed to revise the permits to identify which of the three methods would be used to prove compliance with ground vibration limits when seismic monitoring occurs. According to the letter "the intent of 310 IAC 12–5–36(h) is to allow the permittee to choose which *one* of the three methods will be used to prove compliance with ground vibration limits. It is not intended for the permittee to use whichever method happens to meet the compliance needs at the time." R. at 321(emphasis in the original). Thereafter Solar requested a Special Status Determination.[3] DNR's response was adverse to Solar's position. In part DNR determined "[w]hile all options in the regulations are designed to prevent damage, the permittee must determine *prior to blasting,* how compliance with ground vibrations will be met and at which times the different options will be employed.... Solar's choice of a method in demonstrating compliance *after the blast has occurred* is contrary to the intent of both Federal and Indiana SMCRA." R. at 151 (emphasis in the original). Solar then sought administrative review. An Administrative Law Judge (ALJ) affirmed DNR's Special Status Determination. Thereafter Solar sought judicial review. After conducting a hearing the trial court entered an order setting aside the ALJ's decision on grounds that

---

1. Repealed by P.L. 1–1995 § 91, effective July 1, 1995. For similar provisions, see Ind.Code §§ 14–34–1–1 to 14–34–19–14.

2. Neither the permits themselves nor the precise language contained in the permits are contained in the record. While this exclusion hampers our review it is not fatal to our determination. It would have been helpful to us, for example, to know whether the blasting plans themselves contained the subject language or whether the language appeared elsewhere in the permit.

3. Special status determinations are provided for in 310 IAC 3–1–15 which dictates in relevant part:

A person may, in writing, request the department to interpret a statute or rule administered by the department as applicable to a specific factual circumstance.... The director [or ] the director's delegate ... may, within forty-five (45) days, provide a written response to the request. The response may set forth an interpretation based upon the information provided in the request or may specify additional information needed to respond to the request.

the decision was arbitrary, capricious, and contrary to law. This appeal followed.

 Upon judicial review of an administrative decision the trial court is limited to determining whether the agency action is:

(1) Arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) Contrary to constitutional right, power, privilege, or immunity;

(3) In excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) Without observance of procedure required by law; or

(5) Unsupported by substantial evidence.

Ind.Code § 4–21.5–5–14(d); *Natural Resources Comm'n of the State of Indiana v. AMAX Coal Co.,* 638 N.E.2d 418, 423 (Ind. 1994). On appeal, we review the trial court's decision to determine whether the trial court followed the law. *Id.* Whenever an agency interprets its own statute, the courts accord its interpretation great weight. However if an agency misconstrues a statute that it is charged with enforcing, then the trial court is required to reverse the agency's action as being arbitrary and capricious. *Peabody Coal Co. v. Indiana Dept. of Natural Resources,* 606 N.E.2d 1306, 1308 (Ind.Ct.App. 1992).

 Pointing to the language of Indiana's SMCRA and nearly identical language in its federal counterpart, DNR argues that the ALJ properly interpreted the agency's rule. According to DNR the plain language of the statutes requires that blasting procedures and standards with which the operator must comply must be set forth in the permit before any explosions are detonated. Thus, according to DNR, the trial court erred in setting aside the ALJ's determination. Citing the same state and federal statutes Solar counters that operators are allowed flexibility in conducting their blasting operations. According to Solar the trial court correctly determined that 310 IAC 12–5–36(h) allows operators to specify in their permits alternate methods of demonstrating compliance. At the heart of both parties' argument lies the question: at what point does an operator have to specify the precise method by which the operator proves compliance with ground vibration limits. DNR contends it has the authority to require an operator to make the decision pre-blast. Solar argues an operator can make the decision post-blast. DNR is correct. However in this case it has chosen the incorrect method of insisting on the pre-blast determination.

In part, the purpose of Indiana's SMCRA is to implement and enforce the federal Surface Mining Control and Reclamation Act of 1977. Ind.Code § 14–34–1–3. In so doing DNR may not adopt a rule that is more stringent than corresponding provisions under the federal Act. Ind.Code § 14–34–1–4. The federal counterparts to 310 IAC 12–3–43 and 310 IAC 12–5–36(h) are found at 30 CFR § 780.13 (1998) and 30 CFR § 816.67 (1998) respectively. In both the federal and state rules there is a distinction between a "blasting plan" and a "blast design." Blasting plans, which must be submitted with each application for a permit [4] "outline the procedures the operator intends to follow in conducting blasting operations." 48 Fed.Reg. 9,788, 9,789 (1983). In the blasting plan the operator must demonstrate how it will achieve applicable performance standards, and include information concerning applicable ground vibration and airblast limits and justify the use of these limits. *Id.* "The blasting plan must show the *general approach* to all blasts" and how all performance standards will be met. *Id.* at 9,790 (emphasis added). On the other hand a blast design is more detailed and is blast specific. Although blasting plans *must* be included in the permit application, there is no such requirement for a blast design. Indeed 310 IAC 12–5–33(e)(2) provides "[t]he blast design may be presented as part of a permit application or at a time, prior to the blast, approved by the director."

---

**4.** The provisions of 310 IAC 12–3–43(a) are set forth *supra.* The federal counterpart provides in pertinent part: "Each application shall contain a blasting plan for the proposed permit area, explaining how the applicant will comply with the requirements of §§ 816.61 through 816.88 of this chapter. This plan shall include, at a minimum, information setting forth the limitations the operator will meet with regard to ground vibration and airblast, the bases for those limitations, and the methods to be applied in controlling the adverse effects of blasting operations." 30 CFR § 780.13(a) (1998).

The Office of Surface Mining Reclamation and Enforcement (OSM)[5] specifically rejected the suggestion that blast designs be required in all blasting plans.

> Such detail is unnecessary to assure safe blasting and is unnecessary for the regulatory authority to determine that the blasting will be conducted in accordance with the performance standards. It would be difficult or impossible to require and review blast design for every blast which will occur. Some conditions are unknown at the time of permitting, and operators need flexibility to design blasts for conditions as they are encountered.... OSM does not believe that submission of detailed designs is necessary in the permit application to assure safe blasting in accordance with the performance standards.

48 Fed.Reg. at 9,789–90 (emphasis added). Our reading of the applicable federal regulations discloses that an operator need not include in its permit a blasting plan that identifies which one of the three approved methods the operator intends to use in order to prove compliance with ground vibration limits. By interpreting 310 IAC 12–3–43 and 310 IAC 12–5–36 as requiring Solar to revise its permits to include such information, DNR adopted a rule more stringent than corresponding federal regulations. In short, DNR misconstrued the regulations that it is charged with enforcing. DNR's action was thus arbitrary and capricious and the trial court properly set aside the ALJ's decision. See, Peabody Coal, 606 N.E.2d at 1308. However, contrary to Solar's contention nothing in the regulations prohibits DNR from requiring an operator to include in its blast design a description of the precise method the operator will use to prove compliance with ground vibration limits. We here determine only that such specificity is not required at the time of permitting. Thus Solar was not required to revise its permits as DNR requested.

Judgment affirmed.

## OPINION ON REHEARING

Solar Sources, Inc. (Solar) and the Department of Natural Resources (DNR) seek rehearing of our opinion cited as *Dept. of Natural Resources v. Solar Sources, Inc.,* 701 N.E.2d 1244 (Ind.Ct.App.1998). Although asserting different grounds for their respective petitions, both parties complain of the opinion's last sentence which declares "[t]hus Solar was not required to revise its permits as DNR requested." *Id.* at 1247. As the parties correctly point out the question of whether Solar was required to revise its permits was not before the trial court, and the trial court did not rule on the issue. Indeed the record shows Solar sought administrative review of the order requiring the company to revise its permits. However an Administrative Law Judge determined that the review was time barred. Solar did not appeal that determination. Rather, the question before the trial court concerned whether the DNR properly construed 310 IAC 12–3–43 and 310 IAC 12–5–36. We determined that it did not and affirmed the trial court. Although our decision will likely affect any future permits Solar may obtain, it has no bearing on Solar's current permits. That portion of our original opinion indicating otherwise is hereby vacated. As provided herein the parties' respective petitions for rehearing are granted. In all other respects they are denied.

SHARPNACK, C.J., and DARDEN, J., concur.

---

**5.** The OSM is an agency of the Department of the Interior which is responsible for the administration and enforcement of the federal Surface Mining and Reclamation Act. 30 U.S.C. § 1211(a) and (c).